HENRIETTA A. DARLING *vs.* ELIJAH A. HARMON.

August 24, 1891.

**Findings—Evidence.**—Findings of fact *held* justified by the evidence.

**Mortgage by Absolute Deed—Conveyance by Mortgagee—Liability to Account.**—A mortgagee of real estate (the condition of defeasance not being recorded) exchanged the mortgaged premises for other real estate which was conveyed to him, and which he afterwards sold. In an accounting with the mortgagor, *held*, that the mortgagee was chargeable (at the mortgagor's election) with the *value* of the land received in exchange for the mortgaged premises, even though the mortgagee did not realize its full value upon selling it.

**Mortgage of Undivided Interest—Payment by Mortgagee of Share of Cotenant's Outlay to Preserve Property.**—The estate of a tenant in common is chargeable in favor of his cotenant for his share of the expense necessarily incurred by the latter for the repair and preservation of the property. A mortgagee of an undivided interest, whose mortgage lien is subject to such a charge, may protect his security by paying the claim of his mortgagor's cotenant, and hold the mortgaged estate for his reimbursement.

**Same—Payment pending Litigation between Cotenants.**—The right of the mortgagee is not prejudiced by the fact that he made the payment while litigation was pending between the tenants in common, involving the question of the mortgagor's liability; but the mortgagee takes upon himself the burden of proving the liability of the mortgaged estate for the claim thus paid.

Action by mortgagor against mortgagee by absolute deed for an accounting, brought in the district court for Hennepin county, and

tried by *Hooker*, J., upon whose decision a judgment of $1,292.06 was entered for plaintiff. The plaintiff appeals from the judgment, and the defendant from an order refusing a new trial.

*Cobb & Wheelright*, for plaintiff.

*Hart & Brewer*, for defendant.

DICKINSON, J. The defendant in this action has appealed from an order of the district court refusing a new trial, and the plaintiff has appealed from the judgment. Attention will first be directed to the questions raised on the appeal of the defendant.

In 1884 the plaintiff and her husband, Joseph D. Darling, were engaged in business in the city of Minneapolis, under the partnership name of Darling & Co. The defendant was the president of the National Bank of Commerce of that city. In the latter part of that year the plaintiff and her husband executed to defendant a deed of conveyance of certain real property in said city owned by her, being an undivided half of a part of two lots of land; which conveyance was made to secure the repayment of money then loaned to the plaintiff by the bank, as well as of such advances as might thereafter be made by the bank or by the defendant to the plaintiff, or to the firm of which she was a member. The defendant executed a separate instrument expressing the defeasible nature of this conveyance. The defendant entered and remained in possession of the property until (the deed having been recorded) he afterwards sold it. Other sums were loaned, for which, in accordance with the intention of the parties, the conveyance or mortgage, as we will hereafter term it, became security. The active business of the partnership of Darling & Co. ceased in May, 1885, when the plaintiff's husband formed another partnership with one Dickey, which assumed and did business under the different name of J. D. Darling & Co. That partnership also became indebted to the bank for money loaned. In November, 1885, the indebtedness came to be represented by the partnership note of the company for the sum of $634.46. The above obligations in favor of the bank were by it transferred to the defendant in the latter part of the year 1885, and he also made a further loan of $212.50 to J. D. Darling for the benefit of the new firm. The defendant never foreclosed his mort-

gage, but, without the knowledge or consent of the plaintiff, and without notice, he sold and conveyed the premises to innocent purchasers, in separate parcels. For the sale and conveyance of a part (to one Phelps in 1887) he received, as the consideration therefor, the sum of $750, and a conveyance to himself from Phelps of a lot in Nelson's addition to Minneapolis. The lot last mentioned is found to have been of the value of $7,100 in excess of an incumbrance (of $3,000) resting upon it. In October, 1888, the defendant, being indebted to the bank, of which he had ceased to be president, sold and conveyed to it the lot last described, and received therefor credit on his indebtedness to the amount of $5,000. It may be added that, in the defendant's deed of the mortgaged premises to Phelps, the consideration for the conveyance, as recited, was $7,500, and the defendant then credited the plaintiff on his books with that sum, and a few months later, in rendering an account to the plaintiff, a credit to her of that amount was shown.

In this action the plaintiff sought an accounting, in which she elected to charge the defendant with liability to the extent of what he had received as the consideration for the conveyances of the mortgaged premises. The court allowed as a charge against the defendant, among other things, the sum of $7,500 on account of the sale to Phelps, and held, also, that he should not be credited, in this accounting with the plaintiff, with the amounts found, as above stated, to have been loaned to the firm of J. D. Darling & Co., and to J. D. Darling, ($634.46 and $212.50.) The points made by the defendant, as appellant, involve only the correctness of the ruling of the court upon these items.

1. As to the allowance claimed in favor of the defendant of the two sums last named, only a question of fact is involved, the findings upon which were clearly justified by the evidence. In view of the evidence, the findings must be accepted as establishing the fact that neither the loan to the firm of which the plaintiff's husband and Dickey alone were members, nor that to the plaintiff's husband alone, were by any agreement of the parties brought within this security which had been previously given to the defendant.

2. The evidence justified the finding of the court as to the value

of the land received from Phelps upon the conveyance by the defendant of the mortgaged property. The direct testimony of Elwood and Phelps, as well as the admission on the part of the defendant involved in his crediting the plaintiff with the sum of $7,500 on account of the transaction, constituted sufficient proof of the fact as found.

3. It is further to be considered whether, in this accounting with the plaintiff, the defendant should be charged with the *value* of the land received by him from Phelps in exchange for the mortgaged property conveyed to the latter, upon which theory the court below acted, or only with the amount which the defendant *realized* from it when he subsequently sold it to the bank. On the part of the defendant the latter alternative is insisted upon, although it is admitted that the plaintiff had the right, at her election, to claim from the defendant either the value of the mortgaged property sold by him, or the proceeds of the sale. There can be no doubt of the correctness of the legal proposition thus admitted. But the principle involved in it justifies the conclusion that, if the trustee—for the defendant stood in that relation to the plaintiff—has disposed of the substituted property, he is chargeable with its value, even though he disposed of it for less than its value. *Chamberlain* v. *O'Brien*, 46 Minn. 80, (48 N. W. Rep. 447.) If, as undoubtedly was the case, the defendant became chargeable as a trustee for the plaintiff, at her election, in respect to the property acquired by him in exchange for, or in place of, the mortgaged lands, he could not rid himself of responsibility for its value, if he chose to dispose of it as his own. It may be added, in justice to the defendant, that neither in the case nor in the arguments before us is there any imputation of actual bad faith on his part. He probably supposed that the conveyance of the property to him by deed justified him in disposing of it as his own. Our conclusion is that none of the grounds upon which the defendant, as appellant, seeks the reversal of the order refusing a new trial, are well taken, and that the order should be affirmed.

4. The appeal of the plaintiff calls in question the propriety of the allowance in favor of the defendant of the sum of $564.10, which he, while holding the mortgage on the plaintiff's undivided half of

the property, and being in possession as such mortgagee, paid to her cotenant, one Villa A. Wright, as the plaintiff's share of the expense of certain repairs on the common estate made by said Mrs. Wright. The fact was established in this trial by the evidence, and found by the court, that these expenditures made by Mrs. Wright were necessary for the preservation of the property. The objection now urged to this allowance in favor of the defendant rests upon the fact that the defendant made the payment to Mrs. Wright pending certain litigation between her and the plaintiff, involving the question of this plaintiff's chargeability in the premises. The action (for partition) had been tried, and judgment directed charging this plaintiff's interest in the property with a lien for one-half of the cost of such repairs; but before the judgment was entered this plaintiff had appealed to this court from an order refusing a new trial in that action. That appeal was pending when the defendant paid to Mrs. Wright the amount which had been found chargeable upon the estate of her cotenant, and thereupon the appeal was dismissed. It is contended that this payment was not justifiable, and was merely voluntary, because no judgment had been rendered declaring the plaintiff's estate to be subject to the charge, and because, by such payment, pending the appeal, the plaintiff was prevented from further litigating the claim of her cotenant. The estate of the plaintiff became chargeable for her proper proportion of the expenditure necessarily made by her cotenant for the repair and preservation of the common property, and the plaintiff's mortgagee might protect his security by paying the claim, to which his mortgage was subordinate, and the property became liable for his reimbursement. 2 Jones, Liens, 1147, and cases cited; Coffin v. Heath, 6 Met. 76; Alexander v. Ellison, 79 Ky. 148; 2 Jones, Mortg. 1137. A previous adjudication between the tenants in common was not necessary to justify such a payment by the defendant, although it is true that, by paying the claim before it had been finally adjudicated, he took upon himself the burden of showing that the expenditure by Mrs. Wright had been necessarily made, and that the interest of the plaintiff was legally chargeable. This fact was established in the trial of this case, and it is not to be supposed that the plaintiff might in some way have evaded this lia-

bility if the former litigation between the cotenants had not been interrupted by the payment of the claim. It now appears, not only that·the liability existed, but that it was asserted and was in process of enforcement, by judicial proceedings against the mortgaged property, when the defendant made the payment. He had the right to thus protect his security from the lien for repairs, without waiting for. judgment to be entered. He only took upon himself the burden of making original proof of the facts which a judgment in the former action would have established.

The judgment and the order refusing a new trial, from which separate appeals were taken, are both affirmed.