BENJAMIN F. FULLER AND ANOTHER v. A. M. DENNIS-
TOUN AND OTHERS.

July 10, 1925.

No. 24,452.

**Cotenant must refrain from asserting adverse title as long as cotenancy continues.**

1. The duration of the restraint upon the acquisition and assertion of a paramount adverse title by a tenant in common is coextensive with the existence of the cotenancy; it does not continue after the common interest is at an end.

**No inference from facts pleaded that former owners retained possession as cotenants.**

2. The facts pleaded do not fairly warrant the inference that, at the expiration of the time to redeem from the foreclosure of a mortgage, the former owners of the land retained possession as tenants in common.

**Cotenant may purchase mortgage without duty to redeem from its foreclosure for benefit of his cotenants.**

3. A tenant in common is at liberty to purchase a mortgage on the common property, without incurring a duty to his cotenants to redeem under it from a sale on the foreclosure of a prior mortgage. After the expiration of the redemption period he may acquire the title of the purchaser at the foreclosure sale and, in the absence of fraud or an agreement to acquire it for the common benefit, he may take it in his own right. The motives which prompted him to do so are immaterial.

**Such liberty of purchase not affected by his being also a life tenant.**

4. The fact that a tenant in common also has a life estate in the common property does not prevent him from acquiring the title of the purchaser at the foreclosure sale for his own benefit after the expiration of the redemption period and the extinction of the relation of life tenant and remaindermen.

[1]Reported in 204 N. W. 958.

1. See Tenancy in Common, 38 Cyc. p. 48 (Anno).
2. See Mortgages, 27 Cyc. p. 1229.
3. See Tenancy in Common, 38 Cyc. p. 40.
4. See Tenancy in Common, 38 Cyc. p. 40.

1. See note in 37 L. R. A. (N. S.) 831; 7 R. C. L. 861; 5 R. C. L. Supp. 427.

Action in district court for Redwood county to obtain decree that plaintiffs owned undivided 4/9 in fee subject to life estate, for an accounting, after applying proceeds of mortgage loan obtained by defendant creditors, upon costs incurred by such creditors in acquiring title to premises from foreclosure of first and second mortgages, to ascertain amount required from plaintiffs for their proportion of such costs and make amount required charge on same 4/9, and for partition. Defendants' demurrer to the complaint was sustained, Olsen, J. Plaintiffs appealed. Affirmed.

*Henry Deutsch* and *Donald E. Bridgman,* for appellants.

*A. R. A. Laudon* and *George A. Barnes,* for respondents.

LEES, C.

A demurrer to the complaint on the ground that the facts stated do not constitute a cause of action was sustained and this appeal followed.

In substance the facts alleged are as follows: In the year 1918 the plaintiffs, their brother Willard C. and their mother Phebe M. Fuller, were the owners of a farm of 160 acres in Redwood county. The mother's interest consisted of a life estate and an undivided one-third of the land in fee, and the interest of each of the three sons of an undivided two-ninths in fee, subject to their mother's life estate. Between March 1, 1918, and December, 1922, Mrs. Fuller and her sons joined in the execution of three mortgages on the land. Subsequently she and her son Willard C. were adjudged bankrupts and their interest in the land was sold by the trustee

in bankruptcy to H. A. Baldwin, P. H. Farrall and A. M. Dennistoun, who took the title in trust for the creditors of the bankrupts. These creditors are the defendants in this action, together with Dennistoun, his wife, and the Southern Minnesota Joint Stock Land Bank of Redwood Falls. The first and second mortgages were foreclosed and the redemption period under both foreclosures expired on December 22, 1922. No redemption was made and, at the date mentioned, the title vested in one Willard, who was the purchaser at the foreclosure sales, subject however to the right of redemption of creditors who had liens.

Prior to December 22, the defendants Farmers State Bank and First National Bank of Redwood Falls purchased the third mortgage for the benefit of the creditors represented by Baldwin, Farrall and Dennistoun.

On December 26, 1922, the defendants other than the Dennistouns and the Joint Stock Land Bank purchased the land from Willard. At that time they, through their representatives, could have redeemed as owners of the third mortgage, had they seen fit to do so.

The funds employed to purchase the third mortgage and to make the purchase from the trustee in bankruptcy were furnished by the creditors in proportion to the amount of their several claims.

Subsequent to these transactions the Joint Stock Land Bank made a loan to the holders of the legal title and took a mortgage on the land, which appears to be a valid lien.

Not until many months after December 26, 1922, did the plaintiffs learn that the persons who purchased from Willard were the same persons as those who had made the purchase from the trustee in bankruptcy.

Plaintiffs were never notified to contribute their share of the money expended by the creditors to secure title to the land, but in November, 1923, they tendered to the creditors' representatives their portion of the amount, and the tender was refused.

The creditors who obtained title in the manner above stated did so in order to cut off the interest in the land which the plaintiffs owned and, to carry out this purpose, they refrained from redeeming under the third mortgage.

In presenting the appeal, plaintiffs' counsel argue that a tenant in common who purchases an adverse title cannot make use of it for his own exclusive benefit; that, in the eye of the law, the purchase inures to the benefit of each cotenant who makes or offers to make contribution; that, although the cotenants do not have the legal title when one of them buys in an adverse title, they share in the benefits of the purchase if, when it was made, they were in possession of the land; that, if the right to acquire an outstanding title was obtained by one cotenant at a time when the cotenancy existed and, after it ceased to exist, the title was acquired by virtue of such right, it will be deemed to have been acquired for the common benefit; and that the result is the same if, for the purpose of cutting his cotenants out of their interest in the common property, one of them allows the time to redeem from a mortgage foreclosure sale to expire and purchases the land from the certificate holder after his title has ripened by the failure to redeem. In our view, the case is disposed of by the answer to one question:

On December 22, 1922, title to the land passed to Willard and became absolute save for the right of redemption of subsequent creditors. Johnson v. Melges, 163 Minn. 315, 203 N. W. 983, and cases cited. Did the disability of each of the cotenants to acquire Willard's title survive the expiration of the redemption period?

It is a rule of general application that the duration of the restraint upon the acquisition and assertion of a paramount adverse title is coextensive with the existence in fact of the relation of cotenancy and does not continue after the termination of the common interest. Freeman, Coten. (2d. ed.) § 161; 7 R. C. L. p. 861; McLawhorn v. Harris, 156 N. C. 107, 72 S. E. 211, 37 L. R. A. (N. S.) 831.

Plaintiffs cite Oliver v. Hedderly, 32 Minn. 455, 21 N. W. 478, as authority to the contrary. In that case the holder of a mortgage on the common property entered into a contract with one of the cotenants, whereby the mortgagee agreed to foreclose the mortgage, bid in the property, and convey it to the cotenant upon the payment of the amount due on the mortgage at the expiration of the redemp-

tion period. The cotenancy existed when the contract was made. For this reason it was held that the other cotenants were entitled to share in the benefits of the contract, which had the effect of extending the time for redemption. The case at bar is clearly distinguishable, for here there was no arrangement comparable to this. See also Starkweather v. Jenner, 216 U. S. 524, 30 Sup. Ct. 382, 54 L. ed. 602.

The foundation of the doctrine which disables a cotenant from asserting an adverse title against the other cotenants is that while the relation continues there is a community of interest which gives rise to a community of duty and creates a relation of trust and confidence, which disables each cotenant from doing anything which would prejudice the others in reference to the common property. Hoyt v. Lightbody, 98 Minn. 189, 108 N. W. 843, 116 Am. St. 358, 8 Ann. Cas. 984; 2 Thompson, Real Prop. § 1789; 1 Tiffany, Real Prop. § 201. Otherwise stated, while the confidential relation continues, there is "an obligation on the part of each cotenant to sustain, or at any rate not to assail, the common interest." Oliver v. Hedderly, supra.

Is it possible that the confidential relation may persist after the termination of the common ownership and right of possession? Counsel for plaintiffs insist that it may and that, in the present instance, it did, for the following reasons: (1) Willard had not evicted the cotenants before the adverse title was acquired; (2) the defendants had the right to redeem under the third mortgage and should have exercised it for the benefit of all the parties in interest; (3) the failure to exercise it was part of a scheme to cut plaintiffs out of their interest in the land.

In support of the first proposition it is argued that the cotenants were in possession and that their possession had not been disturbed by Willard. Although the complaint is silent as to this, the assertion is made that each cotenant had a right to possession until December 22; that it should be inferred that all were in possession at that time and that there was no change in the situation in the four succeeding days. In other words, we are asked to assume the existence of two facts not specifically pleaded, namely, that all the

cotenants were in actual possession when the exemption period expired and that they retained such possession after it expired. The doctrine that on demurrer a pleading will be liberally construed should not be extended so far as to cover the present case. Good pleading required plaintiffs to state directly and positively every fact essential to their cause of action. It is not a fair and reasonable inference from the facts directly alleged that the cotenants were in actual possession on December 22, or that they retained possession thereafter, but, if they were, they were no longer cotenants, for their estate and right to possession had been extinguished.

Defendants' right to purchase the third mortgage cannot be questioned. Plaintiffs had the same right but did not see fit to exercise it. No duty rested upon any one of the cotenants to purchase the mortgage for the benefit of the others. Merely because defendants purchased it, they were not instantly charged with the duty of using it as a foundation for redemption in order to protect their cotenants from loss. If defendants had redeemed under the third mortgage, plaintiffs would be in a different position, but they made no use of the mortgage for that purpose. They might have done so under the provision of our statute, G. S. 1923, § 9627, which gives to a creditor having a lien on the mortgaged premises the right to redeem within five days after the expiration of the year allowed to the mortgagor to redeem. Possibly Willard would not have transferred his title to them if they had not purchased the mortgage and gained the right to redeem under it, but there is no allegation that he did so pursuant to any agreement he had with them prior to December 22.

Defendants' purchase of the third mortgage did not in and of itself create a relation out of which any of the duties or disabilities which attach to cotenancy would grow. They were as much at liberty as any stranger to buy and hold the mortgage. Barteau v. Merriam, 52 Minn. 222, 53 N. W. 1061. By acquiring it they obtained a lien upon plaintiffs' interest in the land for their proportionate share of the amount of the mortgage. Kirsch v. Scandia Am. Bank, 160 Minn. 269, 199 N. W. 881.

Since defendants owed plaintiffs no duty to redeem, the motive which prompted them to refrain from exercising the right of redemption has no bearing on the case. If plaintiffs had intended to redeem and, through fraud or deceit, had been induced to abandon their purpose, a different question would be presented, but it is not alleged that plaintiffs would or could have redeemed or that any fraud was practiced to prevent them from redeeming, or that defendants had agreed to redeem for the common benefit.

All that has been said is applicable to the argument directed to the effect of defendants' purchase of Mrs. Fuller's life estate. In the matter of acquiring an encumbrance or outstanding title, a life tenant occupies much the same position as a tenant in common. Whitney v. Salter, 36 Minn. 103, 30 N. W. 755, 1 Am. St. 656; Kreuscher v. Roth, 152 Minn. 320, 188 N. W. 996. At the expiration of the period of redemption, the life tenancy and all its incidents were extinguished and plaintiffs could no longer assert the rights they possessed while the relation of life tenant and remaindermen existed.

Order affirmed.

The Chief Justice took no part.

On September 15, 1925, the following opinion was filed:

PER CURIAM.

Appellants have filed a petition for reargument, in which they ask that this court allow an amendment of the complaint setting forth as additional facts that, prior to December 1, 1922, the defendants' creditors acquired the life estate of Mrs. Fuller, took possession of the land in question and were continuously in possession until long after December 26, 1922.

They state that by reason of an oversight these facts were not pleaded and that, if pleaded and proved, appellants are entitled to the relief demanded in their complaint.

The application for leave to amend should be made to the lower court after the remittitur goes down. The appellants should have

an opportunity to be heard upon the legal questions which will then be presented, but this court should not consider them before the district court has passed on them.

These questions should be determined unaffected by anything said in the opinion heretofore filed and nothing contained therein will be taken as controlling the decision of the new question which will arise if the complaint is amended as indicated.

The petition for reargument is denied.